### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MEWBOURNE OIL COMPANY, ) </br> ) </br> Plaintiff, ) </br> v. ) </br> ) </br> YUKON TRADING ) </br> COMPANY, L.L.C., ) </br> ) </br> Defendant. ) | Case No. CIV-24-143-G |

## COMPLAINT

Plaintiff Mewbourne Oil Company ("Mewbourne" brings this complaint against defendant Yukon Trading Company, L.L.C. ("Yukon") under 28 U.S.C. § 1332 and respectfully shows the following:

### Parties

1. Plaintiff Mewbourne Oil Company is a corporation incorporated under the laws of the State of Delaware, with its principal place of business in Tyler, Texas.

2. Defendant Yukon Trading Company, L.L.C. is an Oklahoma limited liability company with its principal place of business in Oklahoma City, Oklahoma. Yukon may be served with process through its registered agent Michael J. Massad at 1021 NW Grand Blvd., Oklahoma City, Oklahoma 73118.

### Jurisdiction and Venue

3. The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332. Diversity of citizenship is present because there is complete diversity between the parties. Mewbourne is a Delaware corporation with its principal place of business in Texas.

Therefore, Mewbourne is a citizen of Delaware and Texas. *See* 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 85, 88 (2010). Yukon is an Oklahoma limited liability company. On information and belief, all of Yukon's members are Oklahoma citizens. Yukon has been a party to cases removed to this Court on the basis that Yukon is an Oklahoma citizen. *See* No. 5:23-cv-00365-D, *Yukon Trading Company, LLC et al. v. Mewbourne Oil Co.*, Notice of Removal (W.D. Okla., filed May 1, 2023); No. 5:08-cv-00738-M, *JMA Energy Co., LLC, Yukon Trading Co., L.L.C., and Arapaho Land Co., L.L.C. et al. v. BJ Services Company, U.S.A.*, Notice of Removal (W.D. Okla., filed July 18, 2008). Based on these cases as well as a reasonable search of PACER and filings with the Oklahoma Secretary of State, Mewbourne believes that Yukon's members are: (a) Jeffrey McDougall Trust, an Oklahoma private trust whose trustees are all Oklahoma citizens; and (b) JMA Resources Company, L.L.C., an Oklahoma limited liability company with its principal place of business in Oklahoma and whose members are The Andrew McDougall Trust, an Oklahoma private trust whose trustees are all Oklahoma citizens, and The Maggi McDougall Trust, an Oklahoma private trust whose trustees are all Oklahoma citizens. Therefore, Yukon is a citizen of Oklahoma because all of its members are Oklahoma citizens. *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237 (10th Cir. 2015). Moreover, as detailed further below, the amount in controversy exceeds $75,000.

4.   Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Yukon resides in this district. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**Factual Background**

5. Both Mewbourne and Yukon own oil and gas interests in Section 1, Township 13 North, Range 17 West ("Section 1") and Section 12, Township 13 North, Range 17 West ("Section 12") in Custer County, Oklahoma.

**A.    The OCC grants Mewbourne operatorship of Section 1.**

6. In 2021, Mewbourne filed a pooling application with the Oklahoma Corporation Commission (the "OCC") in Cause No. CD-2021-01063 asking the OCC to pool all oil and gas interests in the Cherokee common source of supply of Section 1 (the "Section 1 Unit") and name Mewbourne as operator (the "Section 1 Application"). Yukon protested Mewbourne's application.

7. On September 30, 2021, Mewbourne and Yukon entered into a Letter Agreement concerning, among other property, the Section 1 Unit (the "Section 1 Letter Agreement").

8. Pursuant to the Section 1 Letter Agreement, Yukon withdrew its protest of the Section 1 Application, and on December 28, 2021, the OCC entered Order No. 722379 (the "Section 1 Pooling Order"), which granted the Section 1 Application.

9. Under the Section 1 Pooling Order, any owner of the right to drill on the Section 1 Unit would have the right to participate in the development of the Unit by agreeing to pay their proportionate part of the actual cost of the initial well to be drilled on the Unit within 20 days of the Section 1 Pooling Order. Section 1 Pooling Order § 3(a). Interest owners who participated in the drilling of the initial well would have the

opportunity to participate in subsequent wells on the Section 1 Unit by electing to participate within 20 days of receiving a proposal for such a well. *Id.* § 6.

10. If an owner does not wish to participate in a proposed well under the Section 1 Pooling Order, it has two nonparticipation options: (b) a cash bonus of $450 per mineral acre plus a proportionate share of an overriding or excess royalty of 1/16th of 8/8ths, or (c) $100 per mineral acre plus a proportionate share of an overriding or excess royalty of 1/8th of 8/8ths. *Id.* § 2(b), (c).

11. Under the Section 1 Letter Agreement, Mewbourne agreed to allow Yukon the option of a deferred election for wells drilled on the Section 1 Unit. Section 1 Letter Agreement § 11.C. In lieu of the election procedure provided for in the Section 1 Pooling Order, Yukon has the option of a deferred election and payment period. Instead of the time to elect set forth in the Section 1 Pooling Order, if Yukon exercises its deferred election option, Yukon may make its election within 10 days of receiving notice via certified mail from Mewbourne that Mewbourne intends to spud such a well within 30 days. *Id.* If Yukon fails to timely elect to participate, it is deemed to have relinquished all its non-participating working interest in and to the common source of supply in the Section 1 Unit to Mewbourne at the non-participating highest royalty farmout terms provided for in the Section 1 Pooling Order less and except any wellbores which Yukon has previously participated in within the Section 1 Unit. *Id.*

12. Mewbourne drilled, completed, and began producing from the initial well under the Section 1 Pooling Agreement—the Abernathy 1 AP #1H Well—in 2022.

**B.     The OCC grants Mewbourne operatorship of Section 12.**

13.     In 2023, Mewbourne filed a pooling application with the OCC in Cause No. CD-2023-002067 asking the OCC to pool all oil and gas interests in the Cherokee common source of supply of Section 12 (the "Section 12 Unit") and name Mewbourne as operator (the "Section 12 Application"). Yukon protested Mewbourne's application.

14.     On November 1, 2023, Mewbourne and Yukon entered into a Letter Agreement concerning the Section 12 Unit (the "Section 12 Letter Agreement").

15.     Pursuant to the Section 12 Letter Agreement, Yukon withdrew its protest of the Section 12 Application, and on November 20, 2023, the OCC entered Order No. 738501 (the "Section 12 Pooling Order"), which granted the Section 12 Application. Under the Section 12 Pooling Order, any owner of the right to drill on the Section 12 Unit would have the right to participate in the development of the Unit by agreeing to pay their proportionate part of the actual cost of the initial well to be drilled on the Unit within 20 days of the Section 12 Pooling Order. Section 12 Pooling Order § 3(a). If an interest owner elects not to participate in the initial well or fails to make any election, such owner shall be deemed to have relinquished to Mewbourne the owner's right, title, interest, or claim in the initial well and any subsequent wells drilled under the Section 12 Pooling Order. *Id.* § 5.

16.     Under the Section 12 Pooling Order, if an owner does not wish to participate in a proposed well, it has two nonparticipation options: (b) a cash bonus of $600 per mineral acre plus a proportionate share of an overriding or excess royalty of 3/16th of 8/8ths, or (c) $100 per mineral acre plus a proportionate share of an overriding or excess royalty of 1/4th of 8/8ths. *Id.* § 2(b), (c).

17.     Under the Section 12 Letter Agreement, Mewbourne agreed to allow Yukon the option of a deferred election for wells drilled on the Section 12 Unit. Section 12 Letter Agreement § 4. In lieu of the election procedure provided for in the Section 12 Pooling Order, Yukon has the option of a deferred election and payment period. The Agreement provides that Mewbourne will give Yukon written notice by certified mail of its intent to spud the initial well under the Section 12 Pooling Order no more than 30 days prior to the actual spud date. *Id.* Yukon has ten days from receipt of such notice to elect to participate in the well. *Id.* If Yukon declines to elect or fails to timely elect to participate in the initial well, Yukon will be deemed to have relinquished all its non-participating working interest in and to the Section 12 Unit to Mewbourne at the nonparticipating highest royalty farmout terms provided for in the Section 12 Pooling Order. *Id.*

**C.    Yukon fails to elect to participate in the Abernathy 1/12 Well.**

18.     As the initial well to be drilled under the Section 12 Pooling Order, Mewbourne proposed a multiunit horizontal well with 50% of the completion interval to be on the Section 12 Unit and the other 50% to be on the Section 1 Unit. Under the Section 12 Pooling Order, owners had until December 10, 2023 to elect to participate in the Section 12 Unit test well—the Abernathy 1/12CN #2H Well (the "Abernathy 1/12 Well"). On December 8, 2023, Yukon sent a letter to Mewbourne electing to exercise its option under the Section 12 Letter Agreement to defer its election. Yukon stated that it would make an election on whether to participate upon receipt of a 30-day spud notice from Mewbourne.

19.     On December 22, 2023, Mewbourne sent Yukon a proposal for the Abernathy 1/12 Well under the Section 1 Pooling Order.

20. On January 4, 2024, Mewbourne told Yukon that it would be sending Yukon a spud notice for the Abernathy 1/12 Well (the "Spud Notice") on January 8. Mewbourne sent the Spud Notice under the Section 1 Letter Agreement and Section 12 Letter Agreement on January 8 via certified mail, which Yukon received on January 10. Yukon did not respond.

21. On January 20, Yukon's time to elect to participate expired. On February 6, 2024, Mewbourne spud the Abernathy 1/12 Well.

22. The total estimated cost to drill the Abernathy 1/12 Well is $12,020,500. To properly elect to participate in Section 1 of the Abernathy 1/12 Well, Yukon would have had to pay approximately $900,000 upfront for its proportionate share of the dry hole drilling costs under the Section 1 Letter Agreement. Under the Section 12 Letter Agreement, if Yukon were to properly elect to participate in Section 12 of the Abernathy 1/12 Well, Yukon would be billed monthly for its proportionate share of drilling costs, which would total approximately $1.75 million. Because Yukon failed to elect to participate, Yukon's interest is deemed to have been relinquished, and Mewbourne must bear the vast majority, if not all, of these costs.

23. Yukon disputes that it has missed its opportunity to participate in the Abernathy 1/12 Well and has asserted that it may participate in the Abernathy 1/12 Well.

7

## Cause of Action

### Count 1: Declaratory Judgment

24. Mewbourne incorporates the allegations set forth above as if fully set forth herein.

25. An actual controversy and dispute exists between the parties as to Yukon's right to elect to participate in the Abernathy 1/12 Well.

26. Mewbourne seeks a declaration that Yukon failed to timely exercise its right to participate in the Abernathy 1/12 Well.

27. Mewbourne further seeks a declaration that under the Section 1 Letter Agreement, Yukon has relinquished its non-participating working interest in the common source of supply in the spacing unit covered by the Section 1 Pooling Order to Mewbourne at the non-participating highest royalty farmout terms provided for in the Section 1 Pooling Order less and except Yukon's interest in the Abernathy 1 AP #1H Well.

28. Mewbourne further seeks a declaration that under the Section 12 Letter Agreement, Yukon has relinquished its non-participating working interest in and to the common source of supply covered by the Section 12 Pooling Order to Mewbourne at the non-participating highest royalty farmout terms provided for in the Section 12 Pooling Order.

### Conclusion & Prayer

Wherefore, Plaintiff Mewbourne Oil Company respectfully prays that this Court enters judgment against Defendant Yukon Trading Company, L.L.C. on Mewbourne's

declaratory judgment claim as set forth above and any and all such further relief at law or equity to which Mewbourne may be entitled.

Respectfully submitted,

**HOGAN THOMPSON SCHEULKE LLP**

*/s/ Christopher M. Hogan*
Christopher M. Hogan, FBA # 19-175
chogan@hoganthompson.com
Samantha L. Thompson, FBA # 20-53
sthompson@hoganthompson.com
Cody Rutowski, FBA # 23-77
crutowski@hoganthompson.com
Hogan Thompson Schuelke LLP
1001 Fannin Street, Suite 4775
Houston, Texas 77002
Telephone: (713) 671-5630
Facsimile: (713) 671-5632

**ATTORNEYS FOR PLAINTIFF
MEWBOURNE OIL COMPANY**
