## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

**MEWBOURNE OIL COMPANY,**

**Plaintiff,**

**v.**

**Case No. 5:24-CV-00143-G**

**YUKON TRADING COMPANY, L.L.C.,**

**Defendant.**

## DEFENDANT'S MOTION TO EXCLUDE CERTAIN EXPERT
## <u>TESTIMONY OF DORSEY ROACH AND BRIEF IN SUPPORT THEREOF</u>

Submitted by:

Leah T. Rudnicki, OBA #32688
Sharon T. Thomas, OBA #8881
JulieAnn Robison, OBA #34013
Caroline J. Lewis, OBA #32048
**THE RUDNICKI FIRM**
6305 Waterford Blvd., Suite 325
Oklahoma City, OK 73118
Telephone: (405) 445-7422
Facsimile: (405) 445-7421
leah@rudnickifirm.com
sharon@rudnickifirm.com
julieann@rudnickifirm.com
caroline@rudnickifirm.com
casemanager@rudnickifirm.com

**ATTORNEYS FOR DEFENDANT,
YUKON TRADING COMPANY,
L.L.C.**

## <u>TABLE OF CONTENTS</u>

I.    BACKGROUND ........................................................................................ 2

    A.    Parties' Claims and Contentions..................................................... 2

    B.    Roach's Expert Report and Opinions. ............................................ 5

        1.    Roach's opinions that Yukon did not timely elect to participate and his conclusions that follow that opinion. ..................................... 6

        2.    Roach's general testimony regarding JOAs. ...................................... 8

II.   ARGUMENT AND AUTHORITIES ...................................................... 10

    A.    Standard for Excluding Expert Testimony under Fed. R. Evid. 702........... 10

    B.    Roach's Testimony Regarding Yukon's Purported Receipt of the Spud Notice and his Conclusory Opinions Based on Such Purported Receipt should be Excluded. ...................................................... 11

        1.    Roach is not qualified to give an expert opinion about whether or not Yukon received the spud notice. ........................................... 11

        2.    Alternatively, Roach's testimony about the spud notice is not reliable. ........................................................................................ 13

        3.    Roach's opinions that a "deemed" out election is conclusive and that Yukon was deemed to have elected to forfeit should be excluded. ..................................................................................... 14

    C.    Roach's General Opinion Testimony about JOAs is not Relevant to Any Issue in this Case and Should be Excluded. ............................. 15

III.  CONCLUSION ...................................................................................... 16

<u>EXHIBITS</u>:

Exhibit 1    Dorsey Roach Deposition Excerpts
Exhibit 2    Dorsey Roach Expert Report
Exhibit 3    Section 1 Letter Agreement
Exhibit 4    Section 12 Letter Agreement
Exhibit 5    Lestie Johnson Deposition Excerpts

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*103 Investors I, L.P. v. Square D Co.*,
  470 F.3d 985 (10th Cir. 2006).................................................................. 10

*Atlantic Richfield Co. v. Farm Credit Bank of Wichita*,
  226 F.3d 1138 (10th Cir. 2000).............................................................. 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993) ...................................................................... 1, 13

*Donehue v. Apache Corp.*,
  No. CIV-21-710-D, 2023 WL 8580102 (W.D. Okla. Dec. 11, 2023)........................... 15

*Ecker v. Allstate Ins. Co.*,
  No. CIV-00-1367-C, 2001 WL 36113435 (W.D. Okla. Apr. 9, 2001)......................... 16

*Graves v. Mazda Motor Corp.*,
  675 F. Supp. 2d 1082 (W.D. Okla. 2009) ............................................... 12, 13

*Heer v. Costco Wholesale Corp.*,
  589 Fed. App'x. 854 ..................................................................... 14

*Kumho Tire Co., v. Carmichael*,
  526 U.S. 137 (1999) ............................................................... 1, 6, 11, 12

*Lippe v. Howard*,
  287 F. Supp. 3d 1271 (W.D. Okla. 2018) ......................................... 10, 12, 15

*Norris v. Baxter Healthcare Corp.*,
  397 F.3d 878 (10th Cir. 2005)........................................................... 16

*Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fina.*,
  *N.A.*, 858 F.3d 1324 (10th Cir. 2017) ................................................ 14, 15

*Public Service Co. of Oklahoma v. Burlington Northern R. Co.*,
  53 F.3d 1090 (10th Cir. 1995).......................................................... 15

*Ralston v. Smith & Nephew Richards, Inc.*,
  275 F.3d 965 (10th Cir. 2001).......................................................... 10

*Roe v. FCA US LLC*,
  42 F.4th 1175 (10th Cir. 2022)......................................................... 14

*Specht v. Jensen*,
    853 F.2d 805 (10th Cir. 1988).........................................................................15

*Taylor v. Cooper Tire & Rubber Co.*,
    130 F.3d 1395 (10th Cir. 1997).....................................................................10

*Weisgram v. Marley Co.*,
    528 U.S. 440 (2000) ......................................................................................13

*Wilson v. Muckala*,
    303 F.3d 1207 (10th Cir. 2002).....................................................................15

Rules

Fed. R. Evid. 702 .........................................................................................passim

## DEFENDANT'S MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY OF DORSEY ROACH AND BRIEF IN SUPPORT THEREOF

Defendant, Yukon Trading Company, L.L.C. ("Yukon"), pursuant to Fed. R. Evid. 702 and the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., v. Carmichael,* 526 U.S. 137 (1999), moves the Court to exclude the following opinion testimony of Plaintiff's expert witness, Dorsey Roach ("Roach"):

    (1)    that Yukon received a "spud notice" from Plaintiff Mewbourne Oil Company ("Mewbourne");

    (2)    that Yukon did not timely respond to the "spud notice" and, therefore, was deemed to have relinquished its working interest in the well proposed by Mewbourne, and in all future wells that may be drilled in the two units in which the proposed well was located;

    (3)    that it is industry custom and practice that a "deemed" election not to participate as a result of purported failure to timely respond to a "spud notice" is strictly enforced; and

    (4)    regarding Joint Operating Agreements in general.

The specific opinion testimony sought to be excluded is set forth in Roach's Expert Report and is quoted in the Background section below. Roach's Expert Report was introduced in his deposition taken in this case on October 23, 2024, as Deposition Exhibit 2. *See* Deposition of Dorsey Roach, pp. 8:21 – 9:8 and pp. 79:24 – 80:2, a copy of the

pertinent portions of which are attached hereto as Exhibit "1." A copy of Roach's Expert Report introduced as Deposition Exhibit 2 is attached hereto as Exhibit "2."

Yukon does not move to exclude Roach's Opinion as to certified mail requiring a green card. Exhibit "1," Roach Depo. at pp. 55:9 – 56:6.

## I.     BACKGROUND

### A.     Parties' Claims and Contentions.

Mewbourne and Yukon own oil and gas leases in two adjoining sections of land in Custer County, Oklahoma - Section 1 and Section 12, both in Township 13 North, Range 17 West. *See* Stipulated Facts 3.c and 3.d at pages 2-4 of Joint Status Report and Discovery Plan filed on May 29, 2024 [Doc. No. 15]. Both Sections 1 and 12 are subject to pooling orders (the "Section 1 Pooling Order" and the "Section 12 Pooling Order") issued by the Oklahoma Corporation Commission (the "OCC") under which Mewbourne is the operator. *Id.* at Stipulated Fact No. 3.e.

The Section 1 and Section 12 Letter Agreements (Exhibits 8 and 9 to Roach Deposition) (collectively, "Letter Agreements") provide that Mewbourne was to send a "spud notice" to Yukon by certified mail and that Mewbourne was to commence drilling a well under the Letter Agreements within 30 days of the spud notice. *See* Letter Agreements, Exhibits "3" and "4" hereto. The Letter Agreements provide that if Yukon did not elect to participate or did not respond to the spud notice within 10 days of its receipt of the spud notice, Yukon's entire working interest in the units covered by the Section 1 and Section 12 Pooling Orders would be relinquished. Yukon would be limited to a royalty interest provided in the pooling order to non-participating parties, except for Yukon's interest in a

previously drilled well in Section 1. *Id.; see also* parties' Joint Status Report and Discovery Plan, pp. 1-2, Brief Preliminary Statement [Doc. No. 15].

Mewbourne claims that it provided a spud notice to Yukon of its intent to drill the Abernathy 1/12 CN #2H Well ("Abernathy 2H Well"), as a horizontal well to be drilled and completed in both Sections 1 and 12.[1] Mewbourne claims that it sent the spud notice on January 8, 2024, by use of an on-line service, www.SimpleCertifiedmail.com, and that it was electronically signed for by Yukon when it was delivered by the United States Post Office on January 10, 2024. Mewbourne claims that Yukon did not respond to the spud notice by Saturday, January 20, 2024; that Mewbourne deemed Yukon out of participating in the drilling of the Abernathy 2H Well; and that Yukon relinquished its working interests in the proposed well and in the units covered by the Section 1 and Section 12 Pooling Orders. Mewbourne seeks a declaratory judgment.

Yukon did not receive the spud notice on January 10, 2024. Yukon received two packages from Mewbourne on January 10, and Yukon provided a single electronic signature on January 10, 2024 purporting to represent the certified mail signature for three packages, rather than a signature for each separate document. *See* Yukon's Answer and Counterclaim, p. 15, ¶ 55 [Doc. No. 6]; Deposition of Lestie Johnson, pp. 16:18 – 17:11,

---

[1] In the Joint Status Report the parties referred to the Abernathy 1/12 CN #2H Well as the "Abernathy 1/12 Well." Beginning with Doc. No. 37, Yukon changed the reference to the "Abernathy 2H Well" to distinguish it from the subsequent well drilled by Mewbourne named the Abernathy 1/12 CN #2HR Well (the "Abernathy 2HR Well").

pertinent portions of which are attached as Exhibit "5."[2] Mewbourne recognized Yukon's intent to participate in the drilling of the Abernathy 2H Well as shown by the fact that Mewbourne, prior to January 20, 2024, requested in writing whether Yukon elected to participate in the acreage earned by Mewbourne from non-participating parties under the Section 1 and Section 12 Pooling Orders – which election, under the terms of the Section 1 and Section 12 Letter Agreements, was only provided to Yukon if it was participating in the well proposed by Mewbourne. *See* Letter Agreements, Exhibits "3" and "4." Yukon elected to participate in such acreage and tendered Yukon's share of the costs stated by Mewbourne for acquiring such acreage. Yukon also confirmed its election to participate in the drilling of the Abernathy 2H Well – all before that 2H Well was spud in February 2024. Mewbourne did not complete the Abernathy 2H Well, but drilled and completed the Abernathy 2HR Well, which it did not propose to Yukon. There are other facts and circumstances asserted by Yukon demonstrating its right to participate in the Abernathy 2H Well and Abernathy 2HR Well,[3] which are not germane to this Motion.

Yukon has filed a Counterclaim seeking a declaratory judgment determining that it is entitled to participate in the Abernathy 2H Well and/or the Abernathy 2HR Well, and that it is entitled to share in its proportionate share of the pooled acreage acquired by

---

[2] Lestie Johnson is a legal assistant who signed an electronic pad one time for a delivery that occurred on January 10, 2024. *See* Exhibit "5," Johnson Deposition, p. 6:8-16, pp. 16:24 – 17:8.

[3] It is Yukon's position that it is a participant in both wells; the Abernathy 2H Well being expenses only, and the Abernathy 2HR Well, which has expenses and revenue associated with participating.

Mewbourne. *See* Answer and Counterclaim [Doc. No. 6]. Yukon also asserts that Mewbourne breached the Section 1 and Section 12 Letter Agreements, for which Yukon seeks damages or, in the alternative, specific performance of the Agreements. *Id.*

**B.    Roach's Expert Report and Opinions.**

Roach has expertise as a landman. He provides expert witness service in litigation through UnitPro Land Consultant LLC, of which he is the sole owner, member and employee. Exhibit "1," Roach  Deposition, pp. 12:24 – 13:12. The Section 1 and Section 12 Letter Agreements are known as pre-pooling letter agreements ("PPLAs"). Roach testified that he has done four or five PPLA's in the last few years, but could not recall the names of any companies that were involved. Exhibit "1," Roach Deposition, pp. 16:22 – 17:13, pp. 19:25 – 20:2. He has not testified or had his qualifications accepted as an expert regarding PPLAs in any court case, but said he had testified at the OCC about PPLAs and he could not recall for what companies or for what cases, wells or areas. *Id.* at pp. 35:12 – 37:18, p. 78:6-23. Roach has not done any reports that relate to PPLAs, has not done any seminars, taught any courses, or written any articles specific to PPLAs. *Id.* at p. 52:23-25, pp. 71:13 – 72:6.

Roach testified that he was asked in this case to provide his opinion as to whether Yukon had or had not made a proper election for the drilling of the Abernathy 2H Well. *Id.*, pp. 72:19 – 73:4. His testimony was that Yukon had signed a green card showing receipt of the spud notice on January 10, 2024. *Id.*, pp. 57:22 – 58:3.

Roach testified that when certified mail is used, you use green cards, which are the size of a post card and are usually taped onto an envelope that is being mailed. *Id.*, p. 55:9-

22. Roach testified that the recipient signs the green card, and the green card is evidence that the envelope was received, and the signed green card is returned to the sender. *Id.* Roach testified that there would be a different green card for each envelope. *Id.*, pp. 55:23 – 56:6, p. 165:14-23. Yukon does not challenge this opinion.

Mewbourne's attorney's furnished Roach the documents he reviewed and Roach testified that he could not think of any additional documents he would need or that would be helpful. *Id.*, pp. 46:8-11, 47:25 – 48:18. Roach testified that he saw a copy of the green card signed by Yukon in this case, which was an actual post card type of green card. *Id.*, pp. 57:22 – 58:3. **However, no green cards were used or sent in this case.** Roach later testified that he had not seen a green card for this case. *Id.*, pp. 163:10 – 164:8.

Roach was shown documents produced to Yukon by Mewbourne, but that were not provided to him, that were purportedly sent by Mewbourne by certified mail, using the simplecertifiedmail.com forms, and which were purportedly received by Yukon on January 10, 2024. *Id.* at p. 139:11-17. At the time of his deposition, Roach had never heard of a company called Simple Certified Mail and did not know about simplecertifiedmail.com. *Id.*, p. 58:17-19, p. 140:18-20, pp. 163:10 – 164:8. <u>When asked if simplecertifiedmail.com was reliable, Roach testified that he did not know anything about it.</u> *Id.*, pp. 142:20 – 143:1.

### 1. Roach's opinions that Yukon did not timely elect to participate and his conclusions that follow that opinion.

The following opinions are quoted in full from Roach's Expert Report. They are, in essence, that Yukon did not timely elect to participate, that a deemed election not to participate is "strictly enforced," and that Yukon thereby forfeited its working interests in

the units other than an interest in a prior well and a royalty farmout interest provided by

the pooling orders.

> In my opinion, the Section 1 Pooling Order, the Section 12 Pooling Order, the Section 1 Letter Agreement, and the Section 12 Letter Agreement contradict Yukon's allegations, claims, and defenses against Mewbourne as set out in Yukon's Answer and Counterclaims. Under those Pooling Orders and the Letter Agreements, Mewbourne gave Yukon all the information it needed to elect whether to participate in the Abernathy 1/12 CN #2H Well before the deadline for Yukon to make an election under those orders and agreements. <u>Because Yukon failed to make an election before that deadline, Yukon is deemed to have elected to non-participate</u>—and industry custom and practice is that <u>such an election should be and is strictly enforced.</u> <u>Yukon thus has relinquished all of its interests</u> in Sections 1 and 12 (except for its interest in the Abernathy 1 AP #1H Well) to Mewbourne in and to the common source of supply in the spacing unit covered by the Section 1 Pooling Order and the Section 12 Pooling Order at the non-participating highest royalty farmout terms provided for in the Section 1 Pooling Order and the Section 12 Pooling Order. (Emphasis added.) (Exhibit "2," Roach's Expert Report, p. 3.)

> Under the Section 1 Letter Agreement and the Section 12 Letter Agreement, Yukon had the option to make a deferred election whether to participate in the Abernathy 1/12 CN #2H Well in lieu of the election provided for in the Section 1 Pooling Order and the Section 12 Pooling order. After Yukon exercised its option to make a deferred election, <u>Mewbourne sent Yukon a spud notice on January 8, 2024, that Yukon received on January 10. Once Yukon received that spud notice, Yukon had ten days to elect to participate in the Abernathy 1/12 CN #2H Well</u>— meaning <u>Yukon's deadline to make an election under the Section 1 Letter Agreement and the Section 12 Letter Agreement was January 20. Yukon did not make an election before that deadline and thus failed to timely make an election.</u> As a result, under the Section 1 Letter Agreement and the Section 12 Letter Agreement Yukon is deemed "to have relinquished all its non-participating working interest in and to the common source of supply in the spacing unit[s] covered by" the Section 1 Pooling Order and the Section 12 Pooling Order "to Mewbourne at the non-participating highest royalty farmout terms provided for" in the Section 1 Pooling Order and in the Section 12 Pooling Order. (Emphasis added.) (Exhibit "2," Roach's Expert Report, p. 5, ¶ i.)

> It is my opinion that a non-operator who claims only after the deadline to make an election has already passed that the non-operator did not receive an

election notice (l) that the operator sent by certified mail and (2) <u>for which the non-operator signed when it was delivered did in fact receive the election notice and claims to not have received the notice only to excuse its failure to make a timely election.</u> (Emphasis added.) (Exhibit "2," Roach's Expert Report, p. 7, ¶ k.)

<u>It is industry custom and practice in Oklahoma and other oil and gas producing States that elections</u> made under pooling orders (such as the Section 1 Pooling Order and the Section 12 Pooling Order), pre-pooling letter agreements (such as the Section 1 Letter Agreement and the Section 12 Letter Agreement), joint operating agreements, and similar agreements <u>are strictly enforced</u>. <u>This includes</u> elections to participate, affirmative elections not to participate, and <u>a failure to make a timely election that is deemed an election not to participate.</u> Indeed, even if a non-operator makes an election before its election deadline, that election is strictly enforced, and the non-operator is not allowed to change its election even if it attempts to change its election before its original election deadline. <u>And although an operator has the discretion to extend the deadline to make such an election, the operator is under no obligation to do so.</u> (Emphasis added.) (Exhibit "2," Roach's Expert Report, p. 5, ¶ f.)

As shown below, these opinions and associated testimony are to be excluded; his certified mail opinion remains.

### 2. Roach's general testimony regarding JOAs.

The following are Roach's general opinions relating to JOAs, quoted in full from his Expert Report. There is no JOA involved in this case.

In most States, the owners of working interests will attempt to reach a voluntary agreement to govern operations in a spacing unit including the designation of an operator. These voluntary agreements are almost always in the form of an operating agreement, more commonly referred to as a "Joint Operating Agreement" or "JOA." JOAs are a reflection of industry customs and practices, and address everything from title examination, title failure, operator duties and responsibilities, the drilling of the initial well, the drilling of subsequent wells, the types and amounts of insurance to be carried for the joint account, establishment of nonconsent penalties for non-participation in an operation, operator invoices, non-payment of an operator's invoices, defaults and remedies for nonpayment of invoices, bankruptcy, and a long

list of many other subject matters. (Exhibit "2," Roach's Expert Report, p. 4, ¶ b.)

In the event the parties owning drilling rights cannot reach a voluntary agreement on the pooling of their respective interests under a JOA, then many States provide that an owner of drilling rights can apply with the regulatory agency and request an order that forces the uncommitted owners in the spacing unit to make an election to either participate in the proposed well by paying their share of drilling and completion costs, or relinquish their drilling rights in the unit. This process is called "forced pooling" (it is called "Integration" in Arkansas). Pooling orders require elections from the respondents usually within 20 days. No election is deemed an election not to participate and to relinquish their drilling rights to the operator in accordance with the order. Therefore, JOAs and forced pooling each accomplish the same thing just in different ways. A JOA is a voluntary agreement and provides a clear and orderly development of the unit that protects all parties, whereas a force pooling order is an exercise of the police power of the state that forcibly pools an uncommitted owner and does not provide for the same rights and protections as a JOA. Both JOA's and forced pooling orders contain provisions that require timely elections. And neither allows for any exceptions to these deadlines unless agreed to in writing with the operator. (Exhibit "2," Roach's Expert Report, p. 4, ¶ c.)

The American Association of Professional Landmen ("AAPL") publishes the model form operating agreements that are used almost exclusively by the oil and gas industry for governing joint operations. The first AAPL model form JOA was the AAPL Form 610-1956 Model Form Operating Agreement. The AAPL model form JOA has been revised several times since 1956 resulting in the release of the 1977 JOA, the 1982 JOA, the 1989 JOA, and the 2015 JOA. The AAPL Form 610-2015 Model Form Operating Agreement is the most recent revision to the AAPL form and reflects current industry customs and practices. With this new AAPL form came new provisions for drilling horizontal laterals beginning with the information required in connection with a well proposal. The information required to be included in a 2015 JOA include the type of well-being proposed (horizontal or vertical), objective depth and formation, surface location and terminus, total measured depth, displacements, utilization of rigs (if a spudder rig is to be employed), stimulation operations including staging and sizing, and the estimated drilling and completion costs. An AFE that sets forth a breakdown of the drilling and completion costs is required to be attached to the well proposal letter. In my experience, operators generally include the same information in a well proposal regardless of whether that proposal is made under a JOA or under a pooling order. Mewbourne's well proposal letters and AFE's

9

contained all of this information. (Exhibit "2," Roach's Expert Report, p. 5, ¶ e.)

## II.    ARGUMENT AND AUTHORITIES

### A.    Standard for Excluding Expert Testimony under Fed. R. Evid. 702.

Yukon seeks to exclude Roach's expert opinions regarding the subjects quoted above under Fed. R. Evid. 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Mewbourne, as the proponent of Roach's testimony, has the burden of establishing its admissibility. Rule 702; *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n. 4 (10th Cir. 2001); *Lippe v. Howard*, 287 F.  Supp. 3d 1271, 1278 (W.D. Okla. 2018). This Court has "broad discretion" in determining whether to admit or exclude expert testimony. *Taylor v. Cooper Tire & Rubber Co.,* 130 F.3d 1395, 1397 (10th Cir. 1997).

In considering whether an expert opinion is admissible, the Court determines if the expert is qualified by knowledge, skill, experience, training or education to render the opinion and, if so, whether the expert's opinion is both reliable and relevant. *103 Investors I, L.P. v. Square D Co.,* 470 F.3d 985, 990 (10th Cir. 2006); *Lippe,* 287 F. Supp. 3d at 1277-78. The principles set forth in *Daubert* apply both to "scientific" knowledge and to

testimony based on "technical" and "other specialized knowledge." *Kumho,* 526 U.S. at 141 (internal quotations omitted). Where the proposed expert testimony is not scientific, the court nevertheless is to "'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138 (10th Cir. 2000), quoting *Kuhmo,* 526 U.S. at 152.

**B.    Roach's Testimony Regarding Yukon's Purported Receipt of the Spud Notice and his Conclusory Opinions Based on Such Purported Receipt should be Excluded.**

Roach's opinions that Yukon did not timely participate in the drilling of the Abernathy 2H Well, that a "deemed" election not to participate resulting from a failure to timely elect to participate is strictly enforced, and that Yukon thereby forfeited its working interests in Section 1 and Section 12, other than in a well previously drilled in Section 1, are all based on Roach's belief—at the time he prepared his Report and at his deposition – that Yukon had signed a certified mail receipt as a green card, demonstrating that it received the spud notice on January 10, 2024. It is undisputed in this case that Mewbourne did not use a green card to send the spud notice by certified mail.

**1.    Roach is not qualified to give an expert opinion about whether or not Yukon received the spud notice.**

Roach is qualified in general as an expert landman. However, he does not have the expertise to provide his opinion that Yukon received the spud notice. He testified that he had seen the standard post-card type green card, and that his experience is that a separate

green card is signed for each piece of mail that is delivered by certified mail. However, no green card exists here. This is so because Mewbourne uses an on-line service (i.e., www.SimpleCertifiedmail.com) for multiple pieces of mail, including the spud notice Mewbourne claims it sent to Yukon, and the post office obtained only a single electronic signature for all the items of certified mail. Roach testified that he had never heard of Simple Certified Mail before and could not testify about its reliability.

The inquiry regarding the expert's qualifications requires that the expert not only have the general qualifications to testify about the subject matter, but the expert must also have specific qualifications that provide a foundation for the witness to answer the particular issue involved in the case. *Graves v. Mazda Motor Corp.*, 675 F. Supp. 2d 1082, 1092 (W.D. Okla. 2009), *aff'd,* 405 F. App'x 296 (10th Cir. 2010) (citing *Kumho,* 526 U.S. at 157). In *Graves*, the court stated:

> The controlling Tenth Circuit cases, exemplified by *Ralston,* establish that the expert's qualifications must be both (i) adequate in a general, qualitative sense (*i.e.,* "knowledge, skill, experience, training or education" as required by Rule 702) and (ii) specific to the matters he proposes to address as an expert.

*Id.* at 1093. *Accord, Lippe,* 287 F. Supp. 3d at 1279 (internal quotations and citations omitted).

Mewbourne has not demonstrated that Roach is qualified to provide an opinion that Yukon received the spud notice on January 10, 2024, and, therefore, his opinion to this effect should be excluded.

**2.    Alternatively, Roach's testimony about the spud notice is not reliable.**

Under Rule 702, the Court has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert,* 509 U.S. at 579. The expert testimony must meet "'exacting standards of reliability . . ." *Graves,* 675 F. Supp. 2d at 1093, quoting *Weisgram v. Marley Co.,* 528 U.S. 440, 455 (2000). In this case, where scientific testimony is not involved, factors that the Court may consider in determining whether expert testimony is reliable include:

> (1) whether the expert proposes to testify about matters growing naturally and directly out of his research, independent of the litigation, or whether he has developed his opinion expressly for the purpose of testifying, (2) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, (3) whether the expert has adequately accounted for obvious alternative explanations, (4) whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting, and (5) whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

*Graves,* 675 F. Supp. 2d at 1094-95, citing Advisory Committee Notes to 2002 amendment to Fed. R. Evid. 702.

In this case, Roach's opinion that Yukon received the spud notice on January 10 does not meet the above factors. It is apparent that Roach's opinion was developed for the purpose of testifying rather than growing naturally out of his research. Further, Roach relied on a limited amount of information provided by Mewbourne's attorneys and did not account for obvious alternative explanations. It is also apparent from his deposition testimony that Roach was not being as careful as he would be in his regular profession as a landman outside of his paid litigation consulting, as shown by his initial testimony that

he had seen a green card evidencing that Yukon had received the spud notice; however, he had not seen any green card.

Reliability requires that the methodology employed by an expert be valid; it must be "based on sufficient data, sound methods, and the facts of the case." *Roe v. FCA US LLC,* 42 F.4th 1175, 1181 (10th Cir. 2022). Reliability requires that the "expert testimony must be 'based on actual knowledge, and not mere 'subjective belief'[.]" *Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Tr. v. Alerus Fina., N.A.,* 858 F.3d 1324, 1341-42 (10th Cir. 2017) (citation omitted).

Roach's opinion is not based on the actual facts of this case, but is based on Roach's subjective belief. Under *Daubert* and Rule 702, the Court may exclude "opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert." *Id.*[4] Therefore, Roach's opinion that Yukon did not timely elect to participate in the drilling of the Abernathy 2H Well should be excluded.

### 3. Roach's opinions that a "deemed" out election is conclusive and that Yukon was deemed to have elected to forfeit should be excluded.

Roach's opinions that Yukon's failure to elect by January 20, 2024 is a conclusive election and his testimony that Yukon forfeited its working interests in the units covered by the Section 1 and Section 12 Pooling Orders, other than in a previously drilled well, are based on his opinion that Yukon did not timely elect to participate in the drilling of the Abernathy 2H Well. Because Roach's opinion that Yukon did not timely elect to participate

---

[4] *Ipse dixit* "is used to identify an unsupported statement that rests solely on the authority of the person who makes it." *Heer v. Costco Wholesale Corp.,* 589 Fed. App'x. 854, 861, n. 4 (quoting *Black's Law Dictionary* 905 (9th ed. 2009)).

in the drilling of the Abernathy 2H Well should be excluded under Rule 702 and *Daubert*, his opinions based on that inadmissible opinion are without foundation and likewise should be excluded.

Further, Roach's opinion that Yukon relinquished its working interests in the units is based on the language of the Section 1 and Section 12 Letter Agreements. His opinion therefore is one of law that is for the Court to determine and is inadmissible. Expert testimony that defines the law of the case is not admissible. *See Public Service Co. of Oklahoma v. Burlington Northern R. Co.,* 53 F.3d 1090, 1097 (10th Cir. 1995) ("Under Oklahoma law, the interpretation of an unambiguous contract is a question of law for the courts."). An expert may not state his opinion as to legal standards or legal conclusions drawn by applying law to the facts. *Pioneer Centres,* 858 F.3d at 1342-1343. *See also Lippe,* 287 F. Supp. 3d at 1285 (an expert may not state his opinion as to legal conclusions drawn by applying law to the facts); *Donehue v. Apache Corp.,* No. CIV-21-710-D, 2023 WL 8580102 at *7 (W.D. Okla. Dec. 11, 2023) ("Defendant moves to exclude references to any obligations Defendant may have owed Plaintiffs under Oklahoma law. In the Tenth Circuit, '[i]n no instance can a witness be permitted to define the  law of the case.'") (quoting *Specht v. Jensen,* 853 F.2d 805, 810 (10th Cir. 1988)).

**C.    Roach's General Opinion Testimony about JOAs is not Relevant to Any Issue in this Case and Should be Excluded.**

There is no JOA involved in this case. Therefore, Roach's general opinion testimony regarding JOA's should be excluded. "The 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson v. Muckala,* 303 F.3d 1207, 1219 (10th Cir.

2002). If the proffered expert testimony fails to meet the requirement of relevancy, the Court need not address the Plaintiff's arguments as to reliability. *Ecker v. Allstate Ins. Co.*, No. CIV-00-1367-C, 2001 WL 36113435, at *1 (W.D. Okla. Apr. 9, 2001); *see also Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005). Here, Roach's general opinion testimony regarding JOAs is not relevant to any issue in this case and should be excluded.

## III.    CONCLUSION

For the above reasons, Yukon requests that the Court exclude Roach's opinion testimony that Yukon received a "spud notice" from Mewbourne; that Yukon did not timely respond to the "spud notice" and, therefore, was deemed to have relinquished its working interest in the well proposed by Mewbourne and in all future wells that may be drilled in the two units in which the proposed well was located; that it is industry custom and practice that a "deemed" election not to participate as a result of purported failure to timely respond to a "spud notice" is strictly enforced; and regarding Joint Operating Agreements in general.

Respectfully submitted,

*/s/ Leah T. Rudnicki*

Leah T. Rudnicki, OBA #32688
Sharon T. Thomas, OBA #8881
JulieAnn Robison, OBA #34013
Caroline J. Lewis, OBA #32048
**THE RUDNICKI FIRM**
6305 Waterford Blvd., Suite 325
Oklahoma City, OK 73118
Telephone: (405) 445-7422
Facsimile: (405) 445-7421
leah@rudnickifirm.com
julieann@rudnickifirm.com
caroline@rudnickifirm.com
casemanager@rudnickifirm.com

**ATTORNEYS FOR DEFENDANT,
YUKON TRADING COMPANY,
L.L.C.**

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on this 15th day of April, 2025, a true and correct copy of the above and foregoing document was served on the following counsel of record via the CM/ECF system:

Christopher M. Hogan
Samantha L. Thompson
Cody Rutowski
Hogan Thompson Schuelke LLP
1001 Fannin Street, Suite 4775
Houston, Texas 77002
chogan@hoganthompson.com
sthompson@hoganthompson.com
crutowski@hoganthompson.com
***Attorneys for Plaintiff
Mewbourne Oil Company***

Stephen D. Beam
Stephen D. Beam, P.C.
PO Box 31
Weatherford, OK 73096
Sbeam@ionet.net
***Attorneys for Plaintiff
Mewbourne Oil Company***

*/s/ Leah T. Rudnicki*